Wright
*v.*
Dame.

NANCY BABCOCK *versus* JOHN SMITH, Junior, *et al.*

Whether the defendant in a suit in equity can make use of his own deposition in case
the plaintiff (pursuant to the rule of court) shall deprive him of the privilege of
making oath to his answer, *quære.*

By an indenture between husband and wife, and a trustee, reciting that the husband
had before marriage agreed that the real estate of the wife should be " satisfactorily
secured to her sole and separate use," the husband and wife conveyed her real es-
tate upon the trusts, that the income should be paid to her during the coverture, and
if she should survive her husband, the estate should be reconveyed to her, but that
if she should die before her husband, the income should be paid to him during his
life and at his death the estate should be conveyed to her heirs. Afterwards the
husband and wife were divorced for the cause of adultery on his part. It was *held,*
that the general provision of law, by which, upon such a divorce, the wife would
have been restored to the possession of her real estate, was controlled by the inden-
ture, so that the husband, if he should survive her, would be entitled to the income
during his life.

*It seems* that the trusts above mentioned are not inconsistent with the antenuptial
agreement as recited in the indenture ; but if there is a discrepancy, it does not of
itself, unaided by extraneous evidence, support a claim for reforming the contract
agreeably to the recitals, since it cannot be known whether the intention of the
parties is expressed in the recital or in the other clauses of the instrument.

The general power of reforming contracts, as a distinct branch of equity jurisdiction,
has not been conferred upon this Court.

BILL in equity against John Smith junior, John Smith senior,
Henry Wainwright and Martha Ann Babcock. The plaintiff
alleges, that valuable real and personal estate descended to her
from her father, Abraham Babcock ; that on the 24th of Oc-
tober, 1830, while a minor under guardianship, she intermar-
ried with the defendant, Smith junior ; that upon the treaty for
the marriage it was expressly agreed between Smith junior and
the plaintiff and her guardian, that all her property, real and
personal, should be conveyed and secured to her sole and sep-
arate use, and this agreement was expressed in a letter written
by Smith junior to the guardian ; that no conveyance and set-
tlement of the property were made at the time of the marriage,
by reason of the plaintiff's minority, but it was agreed that

such conveyance and settlement should be made as soon as the plaintiff should become of age ; that before the conveyance was made the guardian died and the letter cannot be found ; that on the 23d of February, 1833, shortly before which time the plaintiff came of age, Smith junior procured an indenture to be drawn, between himself and the plaintiff of the first part, Wainwright of the second part, and Smith senior of the third part, in which it is recited, that before the marriage was solemnized it was agreed that all such real estate as the plaintiff then was or thereafterwards should be entitled to as heir of her father, " should be satisfactorily secured to the sole and separate use of said Nancy, notwithstanding the said contemplated coverture," and for the purpose of carrying the agreement into effect; Smith junior and the plaintiff convey the real estate, and certain furniture purchased with the plaintiff's funds, to Wainwright, his heirs and assigns, in trust ; 1. to permit the plaintiff to receive the income of the real estate to her separate use during the life of her husband ; 2. if the plaintiff should survive her husband, to reconvey to the plaintiff absolutely ; 3. if she should not survive her husband, to pay the income to him during his life ; and 4. at his decease, to convey the property to such of the plaintiff's children as should be then living and the legal representatives of such as should have deceased ; and Smith junior covenants, that he will, at the request of Wainwright or of Smith senior, execute such further instruments as shall be necessary to carry into effect the trusts and purposes declared in the indenture ; that Smith junior procured the plaintiff to join with him in the execution of the indenture ; that she was unacquainted with business of that kind, that no counsel or other person was employed to guard her interests, that the instrument was read to her but once, and then hastily and without explanation, just before executing it, and that she did not understand the purport and meaning, nor the effect of it, but signed it, relying entirely on the good faith and proper care of her husband, and on his promises, to have the conveyance and settlement prepared and made in conformity to the previous agreement ; that the instrument executed is not in conformity to that agreement, and her property is not thereby settled and conveyed to her own sole and separate use, but an

.nterest in the property is vested in Smith junior in the event of his surviving the plaintiff, and an interest is likewise given to her issue who shall be living at his decease, in case he survives the plaintiff; and no disposing power, by an instrument in the nature of a last will or other instrument, is secured to her ; that at the November term 1836, of this Court, the bonds of matrimony between her and Smith junior were dissolved for the cause of adultery on his part, whereby she became entitled by law to the immediate possession of all her real estate in like manner as if her husband were dead, and to such part of her personal estate which came to her husband by her marriage, as the Court should order ; that by an act of the legislature her name was changed from Nancy Smith to Nancy Babcock ; and that the only issue of the marriage is a daughter, named Martha Ann Babcock. The bill prays, that the settlement may be cancelled and a reconveyance of the property decreed, by reason that the plaintiff's signature was obtained by imposition and mistake ; and that a reconveyance may be decreed by reason of the divorce ; and if the same cannot be done, that the instrument may be rectified, and the uses and trusts therein declared so far altered, as to carry into complete effect the antenuptial agreement. And the plaintiff waives the necessity of the defendant's answers being made under oath.

John Smith junior, in his answer, denies that any antenuptial agreement existed relative to securing the plaintiff's property, other than what was carried into effect by the indenture ; and if any such different agreement before the execution of the indenture could be proved, he submits that it could not avail any thing against the express terms of the indenture ; he denies that the plaintiff was ignorant of the purport or meaning of the indenture ; he denies that she had no counsel or other persons to guard her rights ; and asserts that it was at the urgent and repeated requests of persons acting in her behalf that the indenture was drawn up and executed ; he alleges that one of the leading objects of making the indenture, was the supposed exposure of the property to the claims of his creditors ; he alleges that the plaintiff had issue by the respondent, a daughter, who at the time of the making of the indenture was and still is living, in whose favor a trust is created by the indenture

Babcock
*v.*
Smith.

and that the respondent has an interest secured by the indenture, upon the contingency of his surviving the plaintiff, he admits that the decree of divorce has been had, but he denies that it affects any other of his rights than those acquired by virtue of the marriage, and he submits that it has not in law or equity, the additional effect of divesting his title and that of his daughter, acquired under the indenture.

Answers were put in by the other defendants.

The plaintiff filed general replications.

*March 26th.* And now, at the hearing, the plaintiff introduced evidence in support of the bill. Smith junior offered in evidence the deposition of Smith senior, a co-defendant.

*Aylwin* and *Paine*, for the plaintiff, objected to this deposition on the ground that a party could not be a witness.

*Cooke*, on the other side. A defendant in equity is in general entitled to the protection of his answer, and if not permitted to answer under oath, his deposition should be received ; and this case, in which a mistake, if not fraud, is alleged, is peculiarly proper for the admission of such evidence.

*Aylwin.* The respondents would evade the rule of court, allowing the plaintiff to waive an oath to the answer. [ *Wilde* J. There may be a distinction in this respect, that two witnesses are required to contradict an answer under oath.] If Smith senior were a mere trustee, his deposition might be taken on application to a judge, but he resists the bill, alleging that the antenuptial agreement was carried into effect by the indenture. It is true he has no personal interest, unless he shall be charged with costs.

The Court permitted this deposition, and likewise that of Wainwright, (objected to on the same ground,) to be read *de bene esse*, reserving for further consideration the question of their admissibility.

*Paine.* Had there been no conveyance of the land, the plaintiff would have been entitled to possession of it immediately after the divorce. The husband's right under the indenture is no more than he would have had without it, being merely changed from a legal to an equitable right ; and if the legal estate would have been devested by the divorce, the trust estate should be affected by it in like manner. Revised Stat. *c* 76,

§ 27, 28, and notes of the revising commissioners ; *St.* 1828, c. 55. A marriage settlement ought to be subject to this contingent limitation, otherwise the law of divorce would be virtually repealed by such settlement. Clancey on Husband and Wife, 282 ; Bingham on Infancy and Coverture, 276 ; *Jaques v. Methodist Episcopal Church*, 17 Johns. R. 548.

The antenuptial agreement did not contemplate any benefit to the husband or children, but to the plaintiff alone, she being the owner of the property ; and if it is correctly recited in the indenture, it was improper to give any interest to the husband or children. Where the articles of agreement and the settlement are both made before the marriage, and there is a variance between them, the articles are controlled by the settlement ; but if the settlement is made after the marriage, it should be reformed, so as to conform to the articles. *Legg* v. *Goldwire*, cited in Cas. Temp. Talb. 20 ; *Honor* v. *Honor*, 1 P. Wms. 123 ; *West* v. *Errisey*, 2 P. Wms. 349 ; *Randal* v. *Randal*, 2 P. Wms. 464 ; *Uvedale* v. *Halfpenny*, 2 P. Wms. 151 ; *Barstow* v. *Kilvington*, 5 Ves. 593, and *Jenkins* v. *Quinchant*, *in notis* ; *Doran* v. *Ross*, 1 Ves. jun. 57 ; *Payne* v. *Collyer*, 1 Ves. jun. 170 , *Beaumont* v. *Bramley*, 1 Turner & Russell, 52 ; *Leek* v. *Cowley*, 10 Serg. & Rawle, 178.

*Cooke.* The divorce affects rights acquired by the marriage, and no other. Smith junior derives his right from a lawful act of the plaintiff subsequent to the marriage. Revised Stat. c. 59, § 2 ; *Durant* v. *Ritchie*, 4 Mason, 45, 62, 63. The child has an interest under the indenture, which ought to be protected.

This Court has no authority, as a court of equity, to reform a contract.

There is no discrepancy between the recital and the other part of the indenture ; the recital merely states the principal object of the instrument. *United States* v. *Munroe*, 5 Mason, 577.

*Aylwin*, in reply. There is no want of jurisdiction in the Court to enforce trusts and contracts in writing. Revised Stat. c. 81, § 8 ; *Hunt* v. *Rousmaniere's Adm.* 1 Peters's Sup. C. Rep. 13. The covenant for further assurance will enable

the Court to decree that the intent of the parties, as shown by the recital and the letter of Smith junior, shall be carried into effect. From these it is apparent, that the plaintiff was to have the income during her life, with power to dispose of the estate by will or otherwise ; and this position derives strength from the provision, that in case of her surviving her husband, the estate shall be restored to her, without regard to the issue ; whereas under the indenture she cannot prevent the husband, on certain contingencies, from taking as heir to the child.

*April 1st.*     MORTON J. delivered the opinion of the Court. The plaintiff availing herself of the provisions of the 5th Rule, so framed her bill as to deprive the defendant of the usual privilege of answering under oath. And the hearing now comes on upon the proofs in the case. The burden rests entirely upon the plaintiff, and as she has deprived the defendants of some of the means of defence usual in suits in chancery, it would seem but reasonable that she should be required strictly to sustain it.

A new question naturally growing out of the practice under the above rule has been made. The depositions of two of the defendants have been taken and offered in evidence. They contend, that according to the principles and practice in chancery, they are entitled to the benefit of their statements under oath, and that if the plaintiff may shut out their sworn answers, still they should have the benefit of them in the form of testimony. Now whether the depositions of defendants may be admitted in any case, and if so, under what circumstances they may be received, are questions of considerable interest as well as novelty, and which in the pressure of business during the term we have not had sufficient opportunity fully to consider. And not deeming the testimony offered essential to the decision which we have come to, we expressly waive the question, and proceed to the examination of the cause, without regarding the defendants' deposition, and precisely as if the same had not been offered.

We cannot discover in the testimony the slightest evidence of any deception practised upon the plaintiff, or of any influence exerted to induce her to execute the indentures, or of any mistake or want of information in relation to their contents or legal import. On the contrary, so far as we can judge from

the circumstances and the scanty evidence we have, the arrangement was quite as much desired by the wife and her friends, as by the husband and his friends, and the former had quite as influential an agency in preparing and fixing the terms of the settlement as the latter. Indeed we think it apparent that all parties, unless the husband be an exception, were well satisfied with its provisions at the time of its execution and continued so until the misconduct of the husband justified or required the divorce.

This doubtless was a contingency which neither party anticipated, and produced a state of things which was not contemplated, when the indenture was entered into. The action of the contract upon this state of facts being wholly unlooked for, was such as naturally to produce dissatisfaction on the part of the plaintiff. She finds herself deprived of the control and the power to dispose of her property, which she supposes, but for the settlement, she should have had upon the dissolution of her marriage contract. Whether equity can give her relief under these circumstances, is the question which we are now to consider.

In relation to the antenuptial agreement, we find nothing in the testimony which shows the existence, much less the contents, of the letter said to contain it. The only testimony which we have tending to show the existence of any agreement prior to the execution of the indenture, comes from the plaintiff's mother, who says that four months after the marriage the husband told her, "that when her daughter became of age he should make over her property to her and that he should trade aloof from it." This, admitting its entire verbal accuracy, seems to be expressive of a voluntary determination of his own mind, rather than a binding contract with another. It does not purport to be an acknowledgment of a preëxisting agreement, but a declaration of present intention. It has none of the characteristics of a contract, not even the parties necessary to enter into one. No court ever could for a moment think of setting aside the express stipulations of a solemn instrument upon evidence so loose and unsatisfactory as this. Indeed it can hardly be said to deserve any weight in the determination of such a question.

We are then brought to the consideration of the indenture itself. It must stand or fall by its own merits and be judged of solely by its own contents. In most respects it is very plain, explicit and intelligible ; and but for the apparent discrepancy between the recital and the effective parts, there could be no doubt.

In the first place, the instrument, being executed by the husband and wife, clearly conveys and passes the estate to Wainwright. It cannot be doubted that the fee vested in him, and that the plaintiff devested herself of the legal estate. *But it was in trust.* And the uses and trusts are very clearly expressed and declared.

1. The wife is to occupy and use such part of the estate as she may choose, and to receive to her sole and separate use the income of the residue during the life of the husband, if she should outlive him.

2. If the wife survive the husband, then the whole estate is to be reconveyed to her, and she is to hold it in the same manner as if she never had conveyed it.

3. If the husband survive the wife, the net income of the estate is to be paid over to him, and he is to have substantially the benefit of a tenancy by the curtesy.

4. Upon the death of the husband, the whole estate is to be conveyed to the heirs at law of the wife, so that they shall hold it in the same manner as if she had died seised.

This certainly does not appear to be so unreasonable a settlement as to raise any presumption of coercion, imposition or mistake. It is true a contingency has happened, which in the event of the survivorship of the husband, may subject the income of the property to a use which probably was not contemplated by the parties and appears less reasonable than even the legal disposition of the property. By his misconduct, the husband has forfeited, at law, his right by the curtesy. But by the terms of this contract it would seem to be preserved for him. The parties had their option to leave their property to the operation of the general principles of law, or to undertake to regulate and control it by special restrictions and limitations. If they voluntarily and understandingly elected the latter, equity cannot come to their relief. If they secure the advantages,

they must also submit to the inconveniences of such a conventional disposition of the property. Here the wife has had, during her coverture, and is secure of having during her life, the income of her estate, to her own separate use. She has it too secured eventually for the benefit of her heirs. She and they must submit to have the income go to her husband notwithstanding his misconduct, during his life, should he outlive her. We cannot know that he would have executed the settlement upon any other terms, or that it is not much better for the wife than if no settlement had been made. In the latter case, there are many ways in which she might not only have lost the present enjoyment of the estate, but eventually the estate itself to her and her heirs.

But it is contended that a clause in the recital should control the above construction, or that the Court should by it rectify and reform the instrument itself. The introductory part recites, among other things, that the husband had before the marriage agreed with his wife and her guardian, that the estate of the wife " should be satisfactorily secured to the sole and separate use of the said Nancy, notwithstanding the said contemplated coverture." We do not perceive that this clause can in any degree vary the construction which we have before given. It would be more consistent and do less violence to the whole language, to construe this in conformity with the subsequent provisions. It would be no great stretch to suppose that it was meant that she should have the separate use in the manner therein afterwards provided.

But it is argued, that this furnishes sufficient ground for reforming the instrument. This power of rectifying and reforming solemn written contracts, is one which by courts of general chancery jurisdiction is exercised very sparingly and only upon the clearest and most satisfactory proof of the intention of the parties. *United States* v. *Munroe*, 5 Mason, 577 ; *Hunt* v *Rousmaniere's Adm.* 1 Peters's S. C. R. 13.

The general power of reforming contracts never has been exercised by this Court, and it cannot be pretended that as a distinct branch of equity jurisdiction, we possess it. Whether under the head of specific performance we may not, in some cases, exercise a portion of this general authority, we do not

Babcock
*v.*
Smith.

think it necessary to inquire. When there is a written executory contract, to be carried into effect by a further assurance, settlement, conveyance, or specific agreement, and it is imperfectly or but partially executed, it is not improbable that the Court would compel a full execution of the first contract by rectifying and reforming the articles made in pursuance of it, or compelling a more perfect and complete execution of it. But even if we possess the authority, we are all clearly of opinion that this is not a case which requires its exercise.

The whole ground upon which this claim can be placed, is the clause above recited. There is no parol proof of any written agreement prior to the indenture ; there is no evidence that such a parol agreement was entered into, unless it be the testimony of the plaintiff's mother, which we have already considered. It must therefore rest entirely upon this recital. Now we are not disposed to doubt that an estate given to the sole and separate use of the wife without qualification or explanation, carries a right of disposal by will and otherwise. Clancey on Husband and Wife, 282 ; *Jaques* v. *Methodist Episcopal Church*, 17 Johns. R. 583.

Here the agreement recited was, that the estate should be *satisfactorily* secured to the separate use of the wife. There was a settlement made, as we have reason to believe, to the *satisfaction of all parties*. It certainly might have been more favorable to the wife, and less favorable to the husband. But a *separate use* was undoubtedly secured to the wife, and it was *satisfactory*, at the time, and a change of circumstances cannot justify a change in an agreement deliberately and fairly entered into.   .

Besides, where the claim for reformation depends solely on the discrepancy between different clauses of an instrument, unaided by extraneous evidence, how can it be known in which the error lies ? The ground of the action of the Court is the mistake of the scrivener in not having expressed the real intentions and agreement of the parties. Now it is as likely that the mistake would occur in the recital as in any other part of the instrument. And in the case at bar, should we make the alteration prayed for, we should be quite as likely to make a new contract for the parties, as to conform this to their original

intentions. We are therefore clearly of opinion, that there is no ground for the reformation of the instrument and that the plaintiff is not entitled to the relief prayed for.

Babcock<br>v.<br>Smith.

<em>Bill dismissed.</em>